## STATE v. JOSEPH KNIGHT.

*Perjury— Quashing— Coroner's Inquest—Administration of Oath.*

1. Indictments for the higher offences, such as treason, felony, perjury, forgery, &c., should not be quashed. But in cases where it puts an end to the prosecution altogether, as where there is no jurisdiction or the matter charged is not indictable, it is advisable to allow a motion to quash.

2. In perjury, an indictment was held to be defective, where it charged that upon a coroner's inquest the oath in which the perjury is assigned

was administered by a justice of the peace in the presence and by the direction of the coroner. In such case the justice had no jurisdiction, but the inquest is the court of the coroner, and the bill should have charged that the oath was taken before the coroner with an averment that he had competent authority to administer the same.

3. The administration of an oath is a ministerial act, and may be done by any one in the presence and by the direction of the court, but is the act of the court.

4. Proceedings in coroner's inquest discussed by Mr. Justice ASHE.

(State v. Colbert, 75 N. C., 368; State v. Alexander, 4 Hawks, 182; Rowland v. Thompson, 65 N. C., 110, cited and approved.)

INDICTMENT for perjury tried at Fall Term, 1880, of MARTIN Superior Court, before Schenck, J.

The substance of the charge in the bill of indictment is set out in the opinion of this court. The counsel for defendant first moved to quash the bill on several grounds, which motion was overruled. The defendant then entered his plea of "not guilty," but upon the trial the jury convicted him. He then moved in arrest of judgment, for that, the justice of the peace who administered the oath in which the perjury was assigned had no authority so to do. Upon overruling this motion, the court pronounced judgment and the defendant appealed.

Attorney General, for the State.
Mr. J. W. Albertson, Jr., for the defendant.

ASHE, J. In this case the defendant before plea moved the court upon several grounds to quash the indictment, but the motion was disallowed, in which ruling we hold there was no error; for where the application is made on the part of the defendant, the courts have almost uniformly refused to quash an indictment when it appeared to be for some enormous crime, such as treason or felony, perjury, forgery, &c. Arch. Cr. Pl., 66. And in State v. Colbert, 75 N. C., 368, READE, J., delivering the opinion of the court,

says: "Quashing indictments is not favored. It releases recognizances and sets the defendant at large, when it may be he ought to be held to answer upon a better indictment. It is however allowable, and in cases where it puts an end to the prosecution altogether, it is advisable; as when it appears the court has not jurisdiction, or where the matter charged is not indictable in any form. Mr. Chitty in his Criminal Law (p. 300) says, 'the courts usually refuse to quash on the application of the defendant, where the indictment is for a serious offence, unless upon the plainest and clearest grounds, but will drive the party to a demurrer, or motion in arrest of judgment, or writ of error.' It is therefore a general rule that no indictment which charges the higher offences, as treason or felony, or those crimes which immediately affect the public at large, as perjury, forgery, &c., will be thus summarily dealt with."

In the view we take of this case, it is unnecessary to consider any of the grounds of the motion to quash. For after verdict the defendant moved to arrest judgment on the ground that the justice had no authority to administer the oath to the witness examined by the coroner on the inquest. This presents a question worthy of consideration.

The bill of indictment charges that the defendant " came before J. H. Ellison, coroner of the county of Martin, and a jury of good and lawful men duly summoned and sworn to make inquiry, when and how and by what means one Henry Skiles came to his death; and the said Joseph Knight being then and there duly sworn upon the Holy Evangelist of Almighty God by one J. L. Ewell, a justice of the peace in and for the county of Martin, then and there having sufficient power and authority to administer the said oath to the said Joseph Knight, in that behalf, touching and concerning the manner and cause of which the said Henry Skiles came to his death, the said J. L. Ewell, justice of the peace as aforesaid, then and there administered said oath to

Joseph Knight, in the immediate presence and at the request and direction of the said J. H. Ellison, coroner as aforesaid, did then and there upon his oath charge one William A. Weathersbee, before the said Ellison, coroner as aforesaid and the said jury of good and lawful men, duly summoned and sworn, with having assaulted and cut with a knife the said Henry Skiles," &c.

A justice of the peace has no authority to hold an inquisition *super visum corporis. Shultz, ex parte,* 6 Whar., 269. With the inquisition, J. L. Ewell had and could have no official connection. In his official capacity as justice of the peace, he had no power or authority to administer an oath in that case. And where on an indictment for perjury it appears the accused was sworn only by a justice of the peace who had no jurisdiction of the case before him, and therefore had no authority to administer the oath, such an indictment is bad, and on demurrer will be quashed. *State* v. *Furlong,* 26 Me., 69; *State* v. *Alexander,* 4 Hawk, 182.

The inquest was the court of the coroner, and BLACKSTONE says, "the court of the coroner is also a court of record to inquire when any one dies in prison, or comes to violent or sudden death, by what manner he came to his end." 4 Blk., 274. Its being a court of record however has been disputed. But be that as it may, according to the authorities his inquest is a judicial proceeding, and while sitting, is a court.

Where a coroner has notice of a sudden or unnatural death, it is his duty to summon a jury, and the jury appearing are to be *sworn* and *charged* by the coroner to inquire upon the view of the coroner how the party came to his death. 2 Hale, 60. And to make a valid inquest, the coroner and jury must have a view of the body, and the latter must be *sworn* by the former in the presence of the body. These two conditions are indispensable. *Rex* v. *Ferrand,* 3 B. & A., 260. After that he may adjourn to a convenient place to take testimony and make up the report, but in the examina-

tion of witnesses " he must hear evidence on all hands if offered to him, and that upon oath." 2 Hale, 157 ; 1 Leach, 43.

The jury are to be *sworn* and *charged* by him, and the witnesses are to be examined by him upon *oath*. He then has the power to administer an oath. The inquest held by him and the jury while sitting is a court, and he is the judge thereof. It must then follow, that he and he alone has the power and authority to administer the oaths to the witnesses examined before him on the inquisition.

The administration of the oath however is a ministerial act, *Rowland* v. *Thompson*, 65 N. C., 110, and it may be administered by any one in the presence and by the direction of the court ; and the person acting in behalf of the court in such case is a mere instrument, the mouthpiece of the court, but the administration of the oath is the act of the court, and is so regarded and must be so alleged in all legal proceedings. It was just as competent for the coroner to have called upon any unofficial bystander to administer the oath for him, as upon a justice of the peace. It was therefore immaterial whether in this case the justice had the authority to administer the oath or not.

The indictment should have charged that the oath was taken before the coroner and followed by the averment that he had competent authority to administer the same; but there is no such averment in the bill. It has been the practice sometimes for the judges in our superior courts to call on members of the bar, or the solicitor, to swear parties in the presence of the court, and we believe it is the almost universal practice where gentlemen have taken the oaths of attorneys, for the judge to request some member of the bar to administer the oaths. In all such cases, no matter by whom the oath is read, it is taken before the court, and is the act of the court.

But it is said in this case that it sufficiently appears that the administration of the oath was the act of the coroner,

because it is charged that it was administered by J. L. Ewell in the presence and by the direction of the court, and was therefore administered by the court. But this will not do, for every fact and circumstance stated in an indictment must be laid positively; stating a matter by way of argument or inference will render an indictment bad. Arch. Cr. Pl., 55. But aside from that, the indictment is most clearly defective in the particular that it contains no averment that the coroner had competent authority to administer the oath. Arch. Cr. Pr. & Pl., 594, note 2; Bat. Rev., ch. 33, § 62.

There is error. The judgment must be arrested. Let this be certified to the superior court of Martin county.

PER CURIAM.                                               Error.