344 P.2d 491

Courtney D. WARD and Hazel C. Ward, husband and wife, Petitioners,

v.

Henry S. STEVENS, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent.

No. 6887.

Supreme Court of Arizona.

Sept. 30, 1959.

Reed, Wood & Platt, Coolidge, and Tom Fulbright, Florence, for petitioners.

Hash & Bernstein, Phoenix, for respondent.

UDALL, Justice.

Petitioners, Courtney D. Ward and Hazel C. Ward, husband and wife, instituted this original proceeding in certiorari against respondent, Honorable Henry S. Stevens, one of the resident superior court judges of Maricopa County, to test the validity of an order entered by him staying a deposition examination.

The procedural steps giving rise to the instant petition are simple and the facts are nowise in dispute. They may be briefly summarized as follows: on May 1, 1956, petitioners, as plaintiffs, filed with the Clerk of the Superior Court at Florence, Pinal County, Arizona, a civil action against N. D. Davis, et ux., and on January 26, 1959, D'Arnold Davis and Thelma Shipley Davis, husband and wife, were joined as defendants in said action. The suit bore Pinal County court number 12451. The Honorable W. C. Truman is the resident judge of the superior court in Pinal County, and at no time had he ever assigned said cause to respondent or any other judge of the superior court in the state of Arizona. On May 7, 1959, attorneys for plaintiffs (petitioners here), availing themselves of Rule 26(a), of the Rules of Civil Procedure, 16 A.R.S., governing Depositions and Discovery, gave due notice of the taking of the depositions of defendants D'Arnold Davis and Thelma Shipley Davis, his wife; the examination was to be held on May 23, 1959, before a court reporter (who is also a notary public) in the Maricopa County courthouse in Phoenix, Arizona.

On May 22, 1959, attorneys representing Thelma Shipley Davis—who, it appears, is a resident of Maricopa County—presented to respondent Stevens, Judge of Division No. 3, who was then sitting in Maricopa County, a motion for an order staying the taking of her deposition. This pleading bore the title: "In the Superior Court of the State of Arizona in and for the County of Pinal, Courtney D. Ward, et ux, plaintiffs v. N. D. Davis, et al, defendants, No. 12451." Apparently no pleading was ever filed or docketed with the Clerk of Superior Court in Phoenix.

Whereupon respondent Judge Stevens, on the same date, without notice to plaintiffs or their attorneys, made an ex parte order staying the depositon examination of defendant Thelma Shipley Davis "until such time as * * * physical condition of the defendant * * * will allow her to testify in deposition proceedings."

■ After an informal hearing held under the provisions of Rule 1, Rules of the Supreme Court, 17 A.R.S., we granted certiorari pursuant to authority granted by Article VI, § 4, Constitution of Arizona, A.R.S., which is implemented by A.R.S. § 12–2001, so as to resolve an important jurisdictional question. This latter section provides that certiorari may only be granted where an inferior tribunal has exceeded its jurisdiction and there is no appeal nor other plain, speedy or adequate remedy. See, Duncan v. Truman, 74 Ariz. 328, 248

P.2d 879. This latter requirement is clearly met here, as the order in question is not appealable under A.R.S. § 12–2101; and certainly no other remedy is readily available. The decisive question therefore is whether the respondent judge, in issuing this order, was acting without or in excess of his jurisdiction in the matter. In this proceeding we, of course, are not concerned with the merits of the motion or the order granted pursuant thereto. If the respondent had no jurisdictional authority to act upon the motion, it is of no importance that the same order might have been granted by a court of competent jurisdiction. Certiorari issues only to test jurisdiction, and not to determine whether it was erroneously exercised. State ex rel. Andrews v. Superior Court, 39 Ariz. 242, 5 P.2d 192.

Rule 30(c), Rules of Civil Procedure—under which the order in question was necessarily predicated—provides that:

> "* * * upon motion seasonably made * * * and upon notice and for good cause shown, *the court in which the action is pending* may make an order that the deposition shall not be taken, * * *." (Emphasis supplied.)

This provision should be contrasted with the following phraseology of Rule 30(e), governing situations where the party taking the deposition is acting in bad faith or in such manner as to annoy, embarrass, or oppress the deponent, we quote:

"At any time during the taking of the deposition, * * * the court in which the action is pending *or the court in the county where the deposition is being taken* may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in subdivision (c) of this Rule * * *."

█ No question is raised here as to the bona fides of petitioners in noticing the taking of defendant's deposition; therefore Rule 30(e), supra, can have no applicability as to this case. Its relevance here is for the purpose of showing that when the Rules of Civil Procedure authorize the issuance of an order by the judge of the superior court of another county than that in which the action is docketed and pending, the language is explicit. It would appear the maxim of expressio unius est exclusio alterius is applicable.

█ There is a minor point that should first be considered. From the record it appears the respondent judge in this same cause had, at the request of petitioners, previously vacated a similar ex parte order stopping the taking of said deposition. Hence it is contended by respondent that because the parties had requested Judge Stevens to rule in said matter, jurisdiction somehow had been conferred upon him to enter the order now under review. This contention is wholly without merit because

"It is elementary that the parties cannot by stipulation or otherwise create jurisdiction and thereby confer upon the court a power not given by law. The source of the power of the court is the constitution and statutes and it cannot be increased nor altered by consent or agreement." Jasper v. Batt, 76 Ariz. 328, 332, 264 P.2d 409, 411.

It is the petitioners' contention that the instant suit was pending in the Pinal County Superior Court before Judge Truman, and hence, inasmuch as there was no case or proceeding whatever *pending* before respondent Judge Stevens in Maricopa County Superior Court, respondent was wholly without jurisdiction to make any order whatsoever in the premises.

On the other hand, respondent both by his written response to the writ as well as in counsel's brief unabashedly asserts that

"the above entitled case was pending in the Superior Court of the State of Arizona and that, under section 25, Article 6 of the Arizona Constitution, there is but one Superior Court in the State of Arizona."

Hence, in effect, respondent is contending that he, being one of the duly elected, qualified, and acting judges of the Su-

perior Court of the State of Arizona, has had jurisdiction conferred thereby to act in any cause or causes pending in any of the superior courts in any of the fourteen counties of the State of Arizona. If such an interpretation were accepted, then all of the other present 26 judges of the superior court in Arizona would have similar expanded jurisdiction.

Such an astounding interpretation—so disruptive of orderly procedure—should not be accepted unless we are compelled to do so. Let us examine the pertinent constitutional provisions of Article VI, Judicial Department, relative to superior courts. These must be considered as a whole in an effort to harmonize and give effect, if possible, to all of said provisions.

### Section 1

"The judicial power of the State shall be vested in a supreme court, *superior courts*, * * *" (Emphasis supplied.)

### Section 5, provides in part:

"There shall be in each of the organized counties of the State a superior court, for which at least one judge shall be elected by the qualified electors of the county at the general election; * * *"

### Section 7

"The judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof, * * *"

### Section 18

"There shall be elected in each county * * * a clerk of the superior court, * * *"

### Section 25 (an amendment)

"The superior courts provided for in this article are hereby declared to be a single court of the state of Arizona, composed of all the duly elected or appointed and qualified judges of the superior court in each and all of the counties of the state." (This amendment became effective November 22, 1948.)

It will be noted that section 25, supra, does not by its terms purport to amend or repeal any of these other sections of the Constitution. What was the real purpose behind the adoption by the people of this 1948 constitutional amendment? The answer is not difficult to supply. It has been held that when a constitutional provision is clear on its face and is logically capable of only one interpretation, no extrinsic matter may be shown in support of a construction which would vary its apparent meaning, Adams v. Bolin, 74 Ariz. 269, 247 P.2d 617, 33 A.L.R. 2d 1102. However, when, as in this case, the constitutional language is ambiguous, or when a construction is urged which

would result in an absurd situation, the court may look behind the bare words of the provision in order to determine the conditions which gave rise to it and the effect which it was intended to have. State ex rel. Jones v. Lockhart, 76 Ariz. 390, 265 P.2d 447; Whitman v. Moore, 59 Ariz. 211, 125 P.2d 445; McBride v. Kerby, 32 Ariz. 515, 260 P. 435; Greenlee County v. Laine, 20 Ariz. 296, 180 P. 151.

 The materials to which the court may refer as aids in arriving at the correct interpretation vary, depending upon the nature of the instrument to be construed. Thus in considering the proper application of a statute, this court has frequently made reference to the legislative history in order to determine the intent of the legislature. Frye v. South Phoenix Volunteer Fire Co., 71 Ariz. 163, 224 P.2d 651. When constitutional questions have arisen, the court has availed itself of pertinent records of the Constitutional Convention for an insight into the effect intended from the provision in question. Bohannan v. Corporation Commission, 82 Ariz. 299, 313 P.2d 379. This approach, we believe, is equally applicable when, as here, the subject matter is a constitutional amendment proposed by the legislature and referred to a vote of all of the qualified electors of the state at a general election. Article XXI of the Constitution of Arizona provides that in such cases the voters are to be apprised of the purpose and intended effect of the change by means of a publicity pamphlet which the Secretary of State is required by law to prepare and distribute prior to the election. See, A.R.S. § 19–123. We take judicial notice of the official records of the Secretary of State. Bolin v. Superior Court, 85 Ariz. 131, 333 P.2d 295. Although this background material is not necessarily controlling in all cases, it is entitled to some weight. California, under similar statutes, has long adhered to the practice of referring to publicity pamphlets to determine the meaning and purpose of an amendment. See, Carter v. Seaboard Finance Co., 33 Cal.2d 564, 203 P.2d 758; Yosemite Lumber Co. v. Industrial Accident Commission of California, 187 Cal. 774, 204 P. 226, 20 A.L.R. 994.

 A reference to the Publicity Pamphlet of 1948 and the argument advanced in support of this constitutional amendment (there was no argument against it) makes clear the purposes intended. The voters were told:

First: "The constitution and statutes of the State of Arizona permit the judge of any Superior Court of the state to hold court in any county at the request of the judge of the Superior Court thereof. Doubt and un-

certainty presently exist, however, concerning the jurisdiction and power of a visiting judge to hear or determine matters not specifically and specially assigned to him by the local judge. The proposed amendment will remove such doubt and uncertainty and establish clearly the jurisdiction of a visiting Superior Court judge to handle all matters which may be presented to him in the regular course of the business of a Superior Court of the state while he is sitting temporarily therein * * *.

Second: "Another effect of the adoption of the proposed amendment will be to do away with the present inequitable situation whereunder salary adjustments voted by the Legislature for the Superior Court judges of the state are postponed as to some of the * * * judges until two years after they have become applicable to other judges * * *."

It is a matter of common knowledge that the primary purpose in adopting the amendment in question was to overcome—salarywise—our decision in Faires v. Frohmiller, 49 Ariz. 366, 67 P.2d 470. This was expressly so stated by this court in the more recent decision of Coconino County v. Lewis, 76 Ariz. 88, 91, 259 P.2d 256, 257, viz.:

"This amendment dissipated the effect of Faires v. Frohmiller, supra, with the result that when a statute increases the salary of judges of the superior court and it becomes effective as to any thereof, it becomes effective as to all."

▆▆ It is noteworthy that the only situation in which a change in the jurisdiction of judges of the superior court was to be effected by said amendment was when a judge from one county was sitting as a "visiting judge" in another county "at the request of the judge of the superior court thereof." Respondent in issuing the order in question, was sitting in Maricopa County, not in Pinal County; and admittedly he was not acting upon the request of Judge Truman. There is no support here for the contention of respondent that an action pending in one superior court of this state is, by virtue of this amendment, deemed to be pending before any one, or all, of the superior court judges of the state. The implication is clearly otherwise.

We will not impress upon this latest constitutional provision a construction contrary to the avowed purpose thereof. To do so would only result in chaos and confusion and in unnecessary jurisdictional

conflicts among the trial courts of the state. McBride v. Kerby, supra. For an excellent and clear dissertation upon the problem as to jurisdiction and when a matter is *pending* before the court, reference is made to State ex rel. Andrews v. Superior Court, supra. There in a matter arising out of the Winnie Ruth Judd murder case, we quashed an order of the superior court issued at a time when the proceedings were still before a magistrate and nothing was as yet docketed or pending in the superior court. By analogy, the reasoning employed there is pertinent to our problem in the instant case.

 We hold that the boundaries of constitutional jurisdiction of the superior courts—in so far as the operation of the Rules of Civil Procedure are concerned—remain unchanged by the adoption of the amendment (section 25, supra) to Article VI. Inasmuch as the civil case in question was not *pending* before respondent, his order staying the taking of a deposition therein was entered wholly without jurisdiction. Such order is therefore declared to be a nullity.

PHELPS, C. J., and STRUCKMEYER, JOHNSON and BERNSTEIN, JJ., concur.